Good morning, Your Honors. Matt Campbell on behalf of Mr. Springs, and I will be attempting to reserve three minutes for rebuttal. Okay. In this case, the district court erred in ordering forced medication pursuant to cell and thereby impinging on Mr. Springs' fundamental liberty interest of his own physical autonomy. I'd like to focus my arguments primarily on the first cell factor, which is whether the government has proven by clear and convincing evidence that there is an important governmental interest. You know, this one's a tough one because the threat is to murder federal judges, and you're asking federal judges to decide whether or not that's an important interest. And we all should recuse ourselves, but there's an exception for necessity, so here we are. I'm confident the threat was only against Washington judges and not against Brooklyn judges. I have no comments. In any event, I think it's important to recognize several things under the cell framework. Number one, that the government must carry these various factors by clear and convincing evidence, and number two, that this is not a balancing test, that, in fact, if any one fails, then the government has not made out its case. As an initial matter in looking at whether the government has shown important governmental interest, I do want to comment perhaps on what Judge Fletcher was just referring to. Understandably, under case law and the like, I think this crime could be considered a serious offense. We make no bones about that. But where I think, in a sense, the court, the district court perhaps erred, is simply saying that this offense generally is a serious offense because that would be true of virtually any case that is prosecuted in the federal courts. And the case law has said that crimes against persons can be considered serious offenses, crimes against property can be considered serious offenses. There is really no distinction there, and the vast majority of cases, at least in the Eastern District of Washington that are prosecuted, are felony offenses. So I'm not sure that simply saying this is a serious offense carries the day. But what this court pointed to in part in the Hernandez-Vazquez case was that one could look to the guidelines. And the guidelines... Let me recast this just a little bit. The test is not formulated about whether this is a serious offense. The test is formulated in terms of whether or not important governmental interests are at stake. Correct. Which is, I think, overlapping with seriousness of the offense, but it's not exactly the same thing. And I would ask you to respond to the argument, well, the importance here may be something like in preserving our instruments of justice from threat. That may be an important governmental interest. Understood. And I think in addressing that, I would probably have two separate responses. Number one, looking at the circumstances of this event. The facts are, in essence, it's alleged that while at a cellular phone company, Mr. Springs made certain statements about threatening to kill certain federal judges. And certainly we want federal judges to be able to make their decisions free from coercion and the like. But I think in looking at these particular circumstances, the alleged threat was never conveyed to those federal judges. Mr. Springs was not standing at the courthouse door about to make these threats, nor was there any proof of any likelihood that the threats would be carried out. So I think we can look to that. Second, I think we can look, in part, to this Court's decision in Ruiz-Gaxiola. I may be off on the pronunciation. But one of the things that that decision discussed is that if the offense was the result of a mental disorder, that circumstance might render it less important that the government prosecute the particular defendant. And I think everyone would have to concede that if we accept the facts as alleged, any threat resulted from the delusional disorder that all experts agree that Mr. Springs has. So in looking at the need for the government to punish here, I think we have to consider those issues that, frankly, if this case were to proceed toward trial, Mr. Springs would have an excellent defense. And this offense, if it occurred at all, only occurred because of delusions. I don't think anybody would contest that. Counsel, does the government have an interest in trying to convict your client as a deterrent to deter other people generally from threatening federal judges? Judge Gould, I would say that, as a general matter, the government may have, there may be a deterrent benefit to convicting people who are guilty of certain offenses as a general matter. But under the specific facts of this case, I don't think the government has a legitimate interest in convicting people who are delusional and likely not guilty of the offense. Let me ask you a related question. Does the government have an interest in convicting someone of a felony so that that person is not in a position legally to own or carry a gun? I suppose the government could make that argument. I'm not sure that I would accept in every case that the government has an interest in preventing people from having handguns if that's sort of the end that they are trying to achieve. And, again, I think under the facts of our case here, where it's clear that someone suffers from mental illness, where it's clear that the offense, if committed, stemmed solely from that interest, that the government's interests, generally speaking, in prosecuting are lessened. I also think we can't ignore the fact that in this case, regardless of which guideline range we look to, and the Court has said that's a relevant factor in assessing government interest in forced medication, even by the government's numbers, the guideline range is 21 to 27 months. Mr. Springs is coming up on three years in custody. I believe he'll hit the three-year mark on April 28th of this year. So he's, by all accounts, over-served his guideline range. While the experts have said that it may take approximately four to five months to restore him to competency, there's no guarantee. Have you explored the possibility with your client in his, I'm afraid, current delusional state, or I may as well say current unmedicated state, that he simply plead guilty because that may get released right away? I'm picking up on the point you just made, because if we continue in this fashion, he's going to be incarcerated under the best of circumstances for quite a lot longer. Yes, I agree with Your Honor's factual predictions as to where this will go, and that's where I was headed, which is even if we get a report back four months from now that says he's now competent, that doesn't end the inquiry. Then we go to trial. I mean, he's going to be incarcerated for a good long time, whereas if you plead, he's probably out. Now he'll be subject to some form of supervised release, which may or may not be a good thing. Sometimes it is a good thing. Maybe for your client, it would be. Well, I think there's a lot of hypotheticals in there, which is what I would say is even if we got a competency report four months from now that said he was competent, that doesn't end that inquiry. It may very well be that the defense doesn't agree that Mr. Springs is competent at that point. That only makes my point all the stronger. Isn't there some way to end this? Well, unfortunately, I think to get back to the question the Court had asked, and I can't obviously disclose attorney-client privilege information, but I think there's an ethical issue. At this point, we have five experts who have said that Mr. Springs is not competent. If he's not competent, he's not competent to plead guilty. So I think we're stuck. How dated are those reports? I mean, if there were to be a competency hearing today, might the results be different today than when those reports were rendered? The reports are somewhat dated, but what I would offer is there's certainly no evidence that things have changed. Delusional disorder typically is a disorder that's difficult to treat and doesn't go away, as opposed to, say, a drug-induced psychosis or something along those lines. So there's no reason to think that we're in a different posture today, and I agree with Judge Fletcher's comments that it's unlikely on this posture that this is going to resolve any time soon. But I think the answer to that question is since he has so over-served his time and will continue to go past that, that's what decreases the government's interest in punishment. And as the case law holds, there is always the possibility of civil commitment. And that still exists. It does potentially decrease it. But it does potentially decrease it. But doesn't the government still have an interest in having someone in your client's position in a supervised release program? Well, I think that presupposes the notion that he's guilty, which is certainly a concession that we can't make. The government could have that interest, but, again, under the facts as are set forth, I think, adequately in the record, Mr. Springs is not likely to be convicted of these offenses. So while the government may have an interest, generally speaking, in supervised release terms for people who are judged guilty, I think that's a leap that we can't necessarily make in this case. And to the extent that the government tries to claim an interest in some sort of supervision in general, there are other ways to get there. Tell me again why he's not likely to be convicted. Because whether it's the defense doctors or whether it's the government's doctors, every doctor has said that he is incompetent and delusional. There is no basis from the evidence to conclude that he was not in that same state. He'll be found not guilty by reason of his mental incapacities is what you're saying. Correct. Yeah. I see I'm over. Yeah, you tried to save, but good luck with that. Why don't we hear from the other side, and then we'll give you a chance to respond. Yes, Your Honor. Thank you. Good morning, Your Honors. Rudy Vershoor, Assistant United States Attorney from the Eastern District of Washington in Spokane. Your Honors, we're asking that the district court be affirmed in this case for three reasons. One, with regard to any claim that the district court should have considered dangerousness of Mr. Springs, that's really not an issue that's considered in the cell hearing setting. And, in fact, it was already discussed earlier. What are the conditions of his confinement? Where is he confined and under what circumstances? He is at the Butner facility, medical facility in Butner, North Carolina. He is there. He has some free time. He is not being medicated right now. He's just awaiting this ruling on this case for us to proceed further. So, I'm sorry, go ahead. I just wanted to say the practicalities of it because I guess he would be found not guilty by reason of lack of mental capacity because everybody agrees that he did not have the sufficient capacity to commit this crime, I guess, right? What government interest is being served? He would be given time served even if he were to be found guilty, which apparently is problematical. So why are we sustaining this? Well, the government does have important interests, as is pointed out. First of all, this is a serious crime. A conviction on this case is going to result in a conviction which prohibits him from having firearms in the future. He's also going to be on supervised release for a three-year period, which also protects the public. Can a two-year maximum supervised release that attaches to this particular crime? It is on this charge, yes, Your Honor. How about the fact that it's not likely to be convicted at all? I'm not willing to concede that we're not able to convict him. We think there's a strong possibility that he could be convicted. I don't understand that. How do you overcome the enormous amount of medical testimony that says he was not competent? I guess there's a different standard under the criminal law, but it's a practical matter. Don't you have a difficult time in establishing criminal culpability by reason of his mental incapacity here? The standard is slightly different, but, for one, that's not a question that actually was part of this record. But there are certainly ways that we're going to be able to prove. What we don't have is evidence that that mental defect defense is going to work, that he was in such a condition at the time that he didn't know what he was doing. So you're successful with this criminal prosecution because of the different standards to be applied here, I guess. And then you get a conviction, and you think it's important to have that conviction because of the fact that he would be prohibited from carrying a weapon? In part. That is one of the considerations. Well, I don't know what the law is here, but isn't he proscribed from carrying a gun in any event? Currently? I mean, if he was out today? He doesn't have a permit to carry a gun, does he? I don't know if he has a permit. How would he get a permit to carry a gun? I mean, why are you concerned about that? Is that a real legitimate concern, that he would have a weapon if he's not convicted? It is a real concern. This is a man who spent four years as a Navy SEAL, 26 years as a police officer, and was a court security officer at the court where the federal judges are. So he may have already permission to have a weapon is what you're saying. He may be lawfully entitled to have a weapon if not for the fact he would be convicted, and that would be a condition of his supervised release? That's correct. That's your main government interest here? There is also the fact just that we'll have a three-year period of supervised release where he'll be closely watched. Two years? Three years? Three years, Your Honor. And the other interest here, what happens is Mr. Springs is not getting better, and that's the evidence that was adduced by the medical professionals that testified. Once he starts on this medication, all the doctors agreed he will have a lot more insight into his condition. We think that's an important consideration going forward, because once he realizes that, he may be willing to voluntarily stay on that medication once he realizes what his condition is. The Bureau of Prisons was very close to having him voluntarily take this medication, but right at the last moment, because he had agreed to do this initially, he said, you know, there's nothing wrong with me. I'm not taking your medication. Did he take the medication for some period of time and show some improvement and benefits from it? He did. Several years before this incident happened, he was diagnosed with bipolar disorder. He was on this very medication, Abilify, which is the trade name for aripiprazole. He was on it, and Mr. Springs himself testified at these hearings that he saw improvement, that he didn't have these side effects that occur in some of these cases. And so that just gives you insight that this is a drug that's probably going to work on his condition, a specific condition. We also ask you, the government's asking that you take a look at the record or the opinion that the district judge wrote, because I believe it's one of the most robust opinions that's out there. When you look at Gil and Water or some of those other cases, this district judge was very thorough in documenting each of the four self-factors. He was meticulous in walking through those and discussing those factors and where they are in the record. Don't we review several of those for clear error at this point? Pardon me? We review findings for clear error, findings of fact. Yes, Your Honor, you do. Maybe not the first self-factor, but about the government's interest, but the other findings about necessity, about whether it's medically appropriate and so on. Yes, Your Honor, we have to prove those by clear and convincing evidence, the last three self-factors. And we believe that we've done that. If you look not only at the opinion that was written, but at the evidence that was produced and at the cell hearing itself we had Dr. Herbell, Dr. Williams, Dr. Walden all testify. I think Dr. Muscatel also testified. There was a tremendous amount of medical testimony that I think is unmatched in any of the other cases, including Gil and Water, which this Court approved. We prove it by clear and convincing evidence on those factors. But at this point, given the findings that were made, doesn't the appellant, and this is really more a question for the appellant, don't they have to show clear error on those to overturn them? I believe they do have to show that, and I don't think they're able to because the record is so robust in this case. The record that we produced in the cell hearing, which happened over two different days, was very strong in terms of the medical evidence regarding that he would be restored to competency, regarding the side effects, the medical necessity, and that it would be medically appropriate. We think that was very strongly established at the hearing, and the judge's opinion reflects that presentation. I quite agree with you as to factors two, three, and four. The slightly difficult factor is, of course, the one with which Mr. Campbell began, which is to say what's the nature of the government interest here, and that's a mildly complicated question because there are all kinds of things going on here. I think, as in the abstract, a threat to our system of justice, not just a threat to judges but more broadly, is not really just a question of the seriousness of the crime. I mean, there are an awful lot worse crimes than a threat by a crazy man. But I hear you say, well, yeah, but if we convict, then he doesn't get a gun, then he maybe gets some treatment. But I have to say that's the one troubling point for me. All the factors two, three, and four, I mean, they're very well supported in the record. They're basically factual propositions. Judge Quackenbush, I think, is absolutely fine on all of those. Help me understand more why this is an important government interest to prosecute him, to medicate him now after all this time. I mean, he's been incarcerated for, I think, the likely period of his incarceration if he's convicted already. So why medicate him now so we can prolong this process for another couple of years for a possibility of a conviction? Well, first of all, because the conviction itself is an important government interest. He has committed what I think there's no argument that this is a very serious crime. And — Maybe he's committed and maybe he hasn't. We don't have a guilty verdict yet. Yes. He's made a threat against Federal judges. Yes. The crime itself is serious. We have to prove he did it eventually. But you're saying that the first factor would be satisfied in any case where you're dealing with prosecution under criminal statute. You want to get a conviction so that it can never wade the other way. No, we don't believe that's sufficient. The Supreme Court's weight and the appellate courts after that have discussed the factors or the elements of this particular first factor. And not only is that conviction, but the chance of the supervisor at least in not having the ability to possess a firearm, the fact that — and this was an important one because counsel — that that satisfies the first element. I'm just not aware of that. I don't believe there's a case that says that that is sufficient in and of itself. There's these other considerations that I've talked about. And I want to address one that counsel brought up, which is that the nature of the mental illness is intertwined with the crime. And he said counsel indicated, and I think it was Ruiz-Gaxiola said, well, maybe that lessens the government interest. But if you look at Gillenwater II, this panel or this court said that's not the case. It actually strengthens the government's interest because you have a mental condition that suddenly is not being treated. So whenever Mr. Springs gets released, that condition is still there, and it is the condition that led to him — the delusion that led to him wanting to — So hypothetically, strip this case from any supervisory lease and the prohibition about carrying a weapon, and all you have is an abject criminal conviction. Is it your argument that that would be sufficient to satisfy the first element? Well, stripping away the two you said, there's still — there's a deterrence effect that's still out there. You're saying that the criminal conviction itself satisfies the first element in all cases? No, not in all cases. But there are these other considerations. You're not saying that for all crimes. You're saying that for the crime that was charged here. Yes, Your Honor. I could see there'd be some crimes that are not considered serious at all. They still may be felonies under the Federal Code, but that may not reach the level of seriousness here. This is — we consider it a very serious offense. I think one of the things not reflected in the sentencing guidelines is that there were 12 potential victims here. I mean, we didn't want to overcharge 12 counts of this. That seemed a little bit overreaching. The criminal conviction is a deterrent, and that's what you think satisfies the first standard. It is part of what — It's a deterrent against other people making threats against Brooklyn judges, right? It is part of that consideration, yes, Your Honor. Okay. Thank you. Thank you. Let's put a minute on the clock. I do want to address this notion of the interest in firearms. If we look to 18 U.S.C. 922G4, that prohibits the possession of a firearm, and they use the term mental defective or someone who's been committed to a mental institution. So I think it's entirely likely that under the facts that we have here that the government, if it found Mr. Springs in the future with a firearm, would charge him, and he would be — He may already have a permit. He was a Navy SEAL. I mean, I guess they would have to take it away from him, right? Well, I think 922G4 would supersede any permit that he has. It would be a felony right now if Mr. Springs were out on the street, under the government's theory, for him to have a firearm. So I don't think the idea that we need a conviction to prevent him from having firearms is true. The statutes on the books already do that in all likelihood. Secondly, the government has talked about having an interest in treating Mr. Springs or that he gets better, he may realize, and then go forward with treatment. That's a post-conviction interest. That's not a pretrial interest. And I'd point to the decisions that we cited in Demery and Halverson for that. The interest that the government has is in ensuring that he goes to trial, ensuring that he shows up. They don't have an interest in treatment at this point. That's not a pretrial interest that's recognized by the court. This may sound like a silly question, but I want to ask at least one silly question every time I come to sit in the Ninth Circuit. And you haven't done that yet? I'm just the person to answer silly questions. Now, if he decided not to appeal, if he would have taken the medication, he would have obviously then been presumably capable of standing trial. It would have happened a year or two ago. He'd be out of jail right now. So he decided to avoid criminal prosecution by seeking to appeal. And he basically decided he would rather stay in jail for an indeterminate period of time or at loss at liberty, I should say. I think the court has explained the consequences of his decision, but I don't think that that is the mindset that he was using when he made his decision. And I do think the fundamental liberty interest in physical autonomy is sufficient to Not that people are making the rational decision in any event at this particular time, is what you would say. I think I would say he made the decision that he thought was in his best interest. The one last thing I did want to point out very briefly is we would refer to our briefing in regard to the other factors. I agree with the standard of review, as was discussed. But nonetheless, I think what's instructive here is that Judge Quackenbush largely talked about the benefits of the medication without talking about the side effects, several of which, as we pointed out in our brief, are permanent and could affect both a fair trial and could affect Mr. Spring's life going forward. Okay, thank you. Thank both sides for your arguments. Thank you. The case of the United States v. Springs now submitted for decision. The last case on the argument.
judges: W. Fletcher, Gould, Block